MUNICIPALITY OF SAN JUAN, PLAINTIFF AND APPELLANT, *v.* PORTO RICO COAL CO., INC., DEFENDANT AND APPELLEE.

APPEAL from the District Court of San Juan in an Action for Collection of Municipal License.

No. 2122.—Decided March 30, 1920.

MUNICIPAL LICENSE TAX — COAL-YARD — WHOLESALE STORE. — The municipalities of Porto Rico have a right to levy municipal license taxes on establishments where coal is sold at wholesale under "wholesale store" of group "A" of the License Tax Act of 1914.   The expressions "wholesale store and *establecimientos al por mayor*" used in the English and Spanish texts of the said act show that it was the intention of the Legislature to impose a license tax upon all establishments in which any article is sold at wholesale.

The facts are stated in the opinion.

*Mr. Ramón Falcón* for the appellant.

*Mr. Charles Hartzell* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The District Court of San Juan excluded the defendant from the provisions of Act No. 26 of March 28, 1914, inasmuch as it found that the said defendant was not subject to the taxation as defined therein.   The municipality appealed and maintains that the Porto Rico Coal Company, Inc., is selling mineral coal at wholesale and is thus included within section 2, group A, of said act.

Section 1 of said act authorizes a municipality to collect

taxes from any of the businesses or industries thereinafter mentioned.

Section 2 is as follows:

"Section 2.—That the businesses or industries upon which the taxes herein provided may be levied shall be the following:

"*Group A.*—Wholesale stores, mixed stores, dry goods stores, fancy grocery stores, grocery stores, provision stores, furniture stores, pharmacies, drug stores, hardware stores, hat stores, shoe stores, men's furnishing stores, book stores or book binding establishments, bazaars, bicycle or bicycle supply stores, notion and trinket stores, cafés, hotels, restaurants, jewelry stores, establishments for the sale of automobiles or automobile supplies or for the storage or repair of automobiles, stationery stores, confectionery stores, candy stores, ice cream parlors, establishments for the sale of optical, dental or electrical goods, establishments for the sale of lumber or woodwork, boarding houses, eating houses, etc."

It is conceded that the defendant does not fall within group "B" or group "C" specified later on under section 2 and that the only designation at all applicable to it is the first words of group "A," namely, "Wholesale stores." The court below found that the words of the Spanish text "*Establecimientos al por mayor*" only meant wholesale provision stores, if one took their ordinary popular meaning, and that tax laws should be construed strictly. Now, the English text is subject to no such limitation. "Wholesale store" means any kind of a store where articles of any kind are sold at wholesale. The text in English is unmistakable as pointing out, first, "wholesale stores," then "mixed stores," meaning those that partake of the character of wholesale and retail, and then enumerating a number of retail stores and other establishments. In 1914 the Legislature was still partially composed of members whose native tongue was English. The treasurer was such a person and usually had a hand in such laws. The English text makes the law clearer, but to our minds the Spanish text is the generic way of describing an establishment where goods are sold at whole-

sale. From the standpoint of either text it would make no difference, as the court below seemed to think, that "establishments for the sale of lumber or woodwork" are specifically mentioned. The specific mention would only add emphasis if "wholesale stores" may be made to include an establishment selling coal from a coal yard.

"Wholesale stores" in English would perhaps not ordinarily or popularly mean a coal yard, but taken in conjunction with the Spanish text "wholesale stores" means any establishment where coal is stored. From Words and Phrases Judicially Defined, as well as from Webster's definition as applied by numerous courts, it appears that a "store" is "any place where goods are sold.". From Words and Phrases, *supra,* it also appears that "store" was held to mean a place where goods are sold, whether in a house or not, as used in the Code levying a privilege tax on each store. See also other cases under Words and Phrases, Vol. 7, 6672 *et seq.*

We have no doubt from the reading of both texts that the Legislature meant to name all places where goods were sold at wholesale, and both texts should be read. *Viterbo* v. *Friedlander,* 120 U. S. 726, and cases cited. 36 Cyc. 1116. Nor have we any doubt, if the Spanish text be taken alone, that the Legislature meant to include all establishments where goods were sold at wholesale. The popular meaning must yield to the literal meaning when the words "wholesale stores" are taken in apposition to the words "mixed stores" and the enumeration of establishments that in the main are not wholesale.

The answer of the defendant would leave it in doubt as to whether the defendant was not the owner of a "mixed store" as it sold both at wholesale and retail. If so, then no such limitation could be placed on its business as put by the court below, but the latter treated the corporation as a wholesale establishment and the appellee in its brief

acquiesces in this finding. Whether the defendant owned a mixed store or a wholesale store would not change the general reasoning applicable.

The judgment must be reversed and judgment rendered for the complainant.

*Reversed.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.